

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **CHARLES RYAN HALL** | § | Case No. 10-60280 |
| xxx-xx-2250 | § | |
| 12670 Hwy 155 South, Tyler, TX 75703 | § | |
| | § | |
| Debtor | § | Chapter 7 |

| | | |
|---|---|---|
| CHARLES RYAN HALL | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 14-6015 |
| | § | |
| STATE OF TEXAS, | § | |
| by and through its agency, | § | |
| THE TEXAS COMPTROLLER | § | |
| OF PUBLIC ACCOUNTS | § | |
| | § | |
| | § | |
| Defendant | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]

Upon trial of the complaint in the above-referenced adversary proceeding, the

Court issues the following findings of fact and conclusions of law pursuant to Fed. R.

Civ. P. 52, as incorporated into adversary proceedings in bankruptcy cases by Fed. R.

Bankr. P. 7052.

---

[1] These findings of fact and conclusions of law are not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as to other applicable evidentiary doctrines.

## AGREED FACTS[2]

1. Plaintiff Charles Ryan Hall ("Hall") filed a voluntary petition for relief under Chapter 7 in this Court on March 18, 2010 under case no. 10-60280.[3]

2. Jason R. Searcy (the "Trustee") served as the duly-appointed Trustee for the Chapter 7 bankruptcy estate.[4]

3. The Texas Comptroller of Public Accounts (the "Comptroller") filed a proof of claim in the bankruptcy case asserting the existence of an indebtedness which was either secured or enjoyed a priority unsecured status.[5]

4. An Order of Discharge was entered in Hall's favor on July 9, 2010.[6]

5. After the entry of the discharge order, Hall was the successful bidder at a public auction conducted by the Trustee of the non-exempt personal property assets of the bankruptcy estate.[7]

6. The Trustee did not sell any real property as a part of the asset sale because the real property on which Debtor's business was conducted was protected by a homestead claim to which no exemption challenge was made.[8]

7. Hall subsequently objected to the proof of claim of the Comptroller[9] and the Comptroller filed its response to that objection.[10]

---

[2] These agreed facts were set forth in the approved Joint Pre-Trial Order entered in this adversary proceeding on September 28, 2015.

[3] ¶ 1 of the Agreed Issues of Fact.

[4] ¶ 2 of the Agreed Issues of Fact.

[5] Claim #24-1 filed on August 31, 2010.  ¶ 3 of the Agreed Issues of Fact.

[6] ¶ 4 of the Agreed Issues of Fact.

[7] ¶ 5 of the Agreed Issues of Fact.

[8] ¶ 6 of the Agreed Issues of Fact.

[9] See dkt #98 in case no. 10-60280.

[10] See dkt #100 in case no. 10-60280; ¶ 7 of the Agreed Issues of Fact.

8.      On October 3, 2013, a hearing was held regarding the Debtor's objection to the Comptroller's claim.  An Order was entered dismissing the Debtor's Objection due to lack of standing.[11]

9.      Following the administration of the bankruptcy case, the Trustee was discharged and the bankruptcy case was closed on May 14, 2014.[12]

10.     On May 2, 2014, the State of Texas filed a lawsuit in Texas state district court against the Debtor and his new company, All Natural Stone and Grass, Inc.[13]

11.     The Debtor formed All Natural Stone and Grass, Inc. following his discharge and after purchasing the non-exempt assets at an auction conducted by the Trustee in the bankruptcy case.[14]

## ADDITIONAL FINDINGS OF FACT

12.     Charles Ryan Hall operated a landscape supply and services business, beginning in 2000, under the name Charles Ryan Hall, LLC (the "LLC").

13.     The LLC conducted business under the name "All Natural Grass and Stone."[15]

14.     During all relevant periods, the business of the LLC was located on Hall's homestead property at 12670 State Hwy. 155 South, in Smith County, Texas.

15.     The LLC operated from April 2000 through December 2009.[16]

---

[11]  See dkt #104 in case no. 10-60280; ¶ 8 of the Agreed Issues of Fact.

[12]  See dkt #116 in case no. 10-60280; ¶ 9 of the Agreed Issues of Fact.

[13]  ¶ 10 of the Agreed Issues of Fact.

[14]  *Id.*

[15]  Hall filed an assumed name certificate with Smith County, Texas to operate "All Natural Grass and Stone, L.P." on or about March 21, 2000. On March 27, 2000, Hall filed a Texas Sole Owner Application for Sales Tax Permit with the Texas Comptroller.  Hall also filed Articles of Organization of Petitioner LLC with the Texas Secretary of State in April 2000.  *See* Defendant's Ex. A.

[16]  In August 2003, Hall filed the form "Name Under Which Business or Professional Services Is or Will Be Conducted" with Smith County, Texas. The name listed on the form was Charles Ryan Hall,

*The LLC Tax Assessment*

16.    In December 2005, the Comptroller began auditing the LLC for sales and use tax.[17]

17.    On December 8, 2008, the Comptroller concluded its audit, and issued a tax assessment against the LLC in the amount of $318,685.49.  These assessed taxes, penalties and interest covered a period from March 1, 2002 through October 21, 2005.[18]

18.    The LLC disputed the audit assessment and requested a redetermination of the liability through the State's administrative hearings process, occurring through the auspices of the State Office of Administrative Hearings ("SOAH").  The Comptroller granted the request for a redetermination hearing on December 9, 2008.[19]

19.    At the end of December 2008, the Comptroller's Tax Division issued its Position Letter with regard to the LLC issues, and instructed the LLC how to respond.[20] The Tax Division contended that, due to his conflicting registration permits, Hall should bear some individual liability because it was unclear that the generically-titled "All Natural Grass & Stone" was operated by the LLC throughout the audit period.

20.    SOAH conducted the administrative hearings on the LLC assessments.  The matter was evaluated by SOAH administrative law judge, Victor Simonds, based on the parties' written submissions.

---

LLC.  *See* Defendant's Ex. A.

[17]    According to an email from John Bostick, Assistant General Counsel in Administrative Hearings, to David Rock, Manager Technical Support, Audit Division, both employees or agents of the Comptroller, prior to March 3, 2008, the Comptroller was auditing Hall's business as a sole proprietorship. On this date, Hall or his current attorney, L. Don Knight, notified the Comptroller that Hall "conducted business as an LLC." As of November 21, 2008, Hall had already informed the Comptroller that he "contest[ed] the validity of the audit assessment." *See* Defendant's Ex. A. at p. 197 [Bates #0197].

[18]    *Id*. at p. 201 [Bates #0201].

[19]    This reconsideration process is referenced in the subsequent Position Letter by the Tax Division.  *Id*. at p. 31 [Bates #0031].

[20]    *Id*. at pp. 31-41 [Bates #0031-0041].

21.     Judge Simonds issued a Proposal for Decision in August 17, 2009.[21]  The Proposal for Decision upheld the Comptroller's audit assessment against the LLC after giving effect to certain changes to which the Comptroller had agreed.[22]

22.     However, the Proposal for Decision held that the tax assessment against Hall individually should be dismissed because "there is no evidence that Petitioner Hall made any sales."[23]

23.     The LLC filed an exception to this Proposal for Decision on August 31, 2009.  The Tax Division issued its response to the filed exception on or about September 15, 2009.[24]

24.     On November 9, 2009, the Comptroller issued its decision and adopted the Proposal for Decision, including the dismissal of all tax assessments against Hall individually.[25]

25.     On November 10, 2009, the Comptroller issued an amended audit assessment and the tax assessment became final on December 2, 2009.

26.     The final assessments against the LLC included state and local taxes in the aggregate amount of $177,597.13, interest in the amount of $68,082.56 and penalty in the amount of $17,759.70, for a grand total of $263,439.39.[26]

27.     The final 2009 assessment did not assess any sales and use taxes against Hall in his individual capacity.[27]

---

[21] *Id*. at pp. 20-30 [Bates #0020-0030].

[22] For a description of such changes, see the Tax Division's Position Paper.  *Id*. at pp. 31-41 [Bates #0031-0041].

[23] *Id*. at p. 24 [Bates #0024].

[24] *Id*. at p. 15 [Bates #0015].

[25] *Id*. at pp. 5-19 [Bates #0005-0019].

[26] *Id*. at p. 18 [Bates #0018].   The LLC would subsequently forfeit its certificate of formation in April 2010 due to its failure to pay the accrued taxes to the Comptroller.  *See* Defendant's Ex. E.

[27] *Id*. at p. 16 [Bates #0016].

*Successor Liability Assessment Against Hall*

28.   The LLC ceased operations in January 2010, and Hall began operating that month as a sole proprietor a similar-type landscape business with a similar name from the same premises.[28]

29.   On February 10, 2010, Comptroller Enforcement Officer Wendy Steele visited the business premises of the sole proprietorship and issued to the Comptroller on that date a "Request for §111.024 Fraudulent Business Transfer," seeking to assess tax liability against Hall individually under a successor liability theory based upon the apparent transfer of the LLC assets to Hall in his individual capacity.[29]

30.   On February 12, 2010, in response to Steele's request, the Comptroller assessed Hall in his individual capacity for the LLC's audit liability and the LLC's unpaid taxes, in a total amount of $289,738.10.[30]

31.   This "Texas Notice of Tax/Fee Due" was based upon a "Jeopardy Determination" under Texas Tax Code § 111.022.[31]

32.   That Jeopardy Determination assessed the LLC tax liability against Hall individually on the basis of successor liability "due to [his] acquisition of a business, Charles Ryan Hall LLC, with outstanding liabilities through fraudulent transfers or sham transaction[s]."[32]

33.   This successor liability assessment against Hall encompassed the tax liabilities that had been assessed against the LLC for the period beginning March 2, 2002 through December 31, 2009.[33]

---

[28]   According to the Tax Application Summary for the "sole owner/individual" entity, the first taxable date for Hall in his individual capacity, d/b/a "All Natural Stone and Grass," was January 11, 2010.   Defendant's Ex. C at p. 9 [Bates #029].

[29]   *Id*. at pp. 5-8 [Bates #025-028].

[30]   *Id*. at pp. 2-4 [Bates #022-024].

[31]   *Id.*

[32]   *Id.* at p. 2 [Bates #022].

[33]   *Id.* at p. 3 [Bates #023].

34. On March 2, 2010, Jim Echols, a Tyler attorney retained by Hall, submitted a "formal request" to the Comptroller for a hearing contesting the Jeopardy Determination and its successor liability basis.[34]

35. On March 18, 2010 (the "Petition Date"), Hall filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court under case no. 10-60280.

36. Mr. Echols was Hall's attorney of record in his Chapter 7 bankruptcy case before this Court.

37. Hall listed the Attorney General of Texas – Taxation Division and the Texas Comptroller of Public Accounts in his bankruptcy schedules. Individual taxing authorities of multiple municipalities and counties were also listed.[35]

38. On July 9, 2010, Hall was granted a discharge in his individual Chapter 7 case.[36]

39. After the filing of his voluntary Chapter 7 petition, Hall continued to operate a landscape supply company as a sole proprietorship from the location formerly utilized by the LLC.

40. Hall filed all required state sales tax returns with, and tendered all required sums to, the Comptroller through 2010.[37]

41. At all times subsequent to the filing of his voluntary Chapter 7 petition, Hall continued to pursue his administrative remedies to set aside the Jeopardy Determination and the assessment of tax against him individually based upon successor liability.

---

[34] Defendant's Ex. D. at pp. 50-52 [Bates #083-085]. The Comptroller received the request on March 4, 2010. The Comptroller confirmed the granting of a hearing on this issue in letter to Jim Echols, dated April 9, 2010.

[35] *See* dkt #12 filed on April 12, 2010 in case no. 10-60280.

[36] *See* dkt #48 entered on July 9, 2010 in case no. 10-60280.

[37] Defendant's Ex. F.

42. On February 28, 2013, the Tax Division issued its Position Letter in response to Hall's challenge to the Jeopardy Determination and the imposition of successor liability.[38]

43. Hall, acting through his attorney Echols, filed a reply to the Position Letter on March 14, 2013, contending all collection activity should cease as a result of Hall's receipt of a bankruptcy discharge.[39]

44. In its response to Hall's reply issued on April 18, 2013, the Tax Division rejected the contention that the bankruptcy discharge had any effect upon the successor liability assessment made against Hall and Hall was notified through his attorney that he was required to make an election as to whether his challenge would be heard by an administrative law judge through either oral or written submission, or whether he desired to dismiss his hearing altogether.[40]

45. On July 2, 2013, Hall filed an objection to the proof of claim for $431,860.76 which had been filed by the Comptroller in his bankruptcy case;[41] however, this Court subsequently dismissed that claim objection for Hall's lack of standing.[42]

46. On July 5, 2013, Hall submitted a Supplement to Position Letter to the Comptroller. This submission outlined generic descriptions of the events surrounding the Chapter 7 bankruptcy case and asserted that the Jeopardy Determination "claim imposed by the [C]omptroller on Charles Ryan Hall, individually, is a successor liability claim and is therefore dischargeable."[43]  No legal authorities accompanied these assertions.

---

[38] Defendant's Ex. D. at pp. 42-46 [Bates #075-078].

[39] *Id*. at p. 38 [Bates #071].

[40] *Id*. at pp. 36-37 [Bates #069-070].  [The Court must note that a page of the referenced letter is missing from the submitted exhibit].

[41] *See* dkt #98 filed on July 2, 2013 in case no. 10-60280.   That claim had been filed almost three years earlier on August 31, 2010.

[42] *See* dkt #104 filed on October 3, 2013 in case no. 10-60280.

[43] Defendant's Ex. D. at pp. 34-35 [Bates #067-068].

47.   On September 3, 2013, the administrative law judge from the State Office of Administrative Hearings, in a 13-page opinion, issued his "Proposal for Decision" in which he rejected Hall's request for redetermination of the Jeopardy Determination and the assessment of successor liability with detailed findings of fact and conclusions of law.[44]

48.   Among the findings was that Hall had transferred substantially all of the LLC assets to himself as a sole proprietor doing business as All Natural Stone and Grass[45] and that, upon consideration and fulfillment of at least five factors, Hall's acquisition of the business constituted an acquisition through a fraudulent transfer sale or sham transaction pursuant to Texas Tax Code §111.024.[46]

49.   Hall filed no objection or exception to the Proposal for Decision, though he was given 15 days to do so.[47]

50.   On October 8, 2013, the Comptroller adopted the Proposal for Decision verbatim and issued a final order upholding the validity of the Jeopardy Determination and the assessment of successor liability against Hall for the LLC taxes under Texas Tax Code § 111.024.[48]   That Order informed Hall that he had 20 days within which to request a rehearing.[49]

51.   Hall timely requested a rehearing of the final decision, asserting that successor liability had been erroneously imposed because the LLC assets had been transferred to the Chapter 7 trustee of Hall's bankruptcy estate before he had exercised control and, even if successor liability could be imposed, the administrative law judge had utilized an incorrect measure of liability.[50]

---

[44]   *Id*. at pp. 22-32 [Bates #055-065].

[45]   *Id*. at p. 9 [Bates #049], reflecting the transposition of the business name from the LLC.

[46]   *Id*. at p. 10 [Bates #050].

[47]   *Id*. at p. 18 [Bates #051].

[48]   *Id*. at pp. 8-20 [Bates #041-053].

[49]   *Id*.

[50]   *Id*. at pp. 4-5 [Bates #037-038].

52.     After the Tax Division opposed Hall's reconsideration request on the ground that he was simply restating his rejected arguments,[51] the Comptroller issued an order denying Hall's motion for rehearing on November 7, 2013.[52]

53.     On April 29, 2014, the State of Texas and various county taxing authorities subsequently sued Hall individually in an action filed before the 53rd Judicial District Court in Travis County, Texas based upon his unpaid tax obligations imposed by the Jeopardy Determination and confirmed by the Comptroller's administrative law process.[53]

54.     Hall's Chapter 7 bankruptcy case was closed and its Trustee discharged on May 14, 2014.[54]

55.     Hall filed his complaint against the Comptroller in this adversary proceeding on August 29, 2014.[55]

56.     In his adversary complaint, Hall originally sought a declaratory judgment that:

   (1)  the post-petition determination process whereby the tax assessment was made against Hall individually on the basis of a purported pre-petition fraudulent transfer of assets was precluded by the automatic stay and by the Comptroller's lack of standing to pursue a fraudulent transfer claim in the post-petition period;

   (2)  that, to the extent that the tax liability assessed against Hall individually was based upon a post-petition fraudulent conveyance of assets, such assessment

---

[51]  *Id.* at p. 3 [Bates #036].

[52]  *Id.* at p. 2 [Bates #035].

[53]  Defendant's Ex. H.  The state court petition also sought monetary relief against Hall's new corporate entity, All Natural Stone and Grass, Inc., based on the same successor liability theory upon which Hall's liability was assessed.

[54]  *See* dkt #116 entered on May 14, 2014 in case no. 10-60280.

[55]  *See* adversary dkt #1.

was void as an undue and improper restriction of the Trustee's control over Hall's assets in the post-petition period; and

(3) that the asserted tax liability was subject to Hall's discharge and any post-discharge collection activities of the Comptroller violated the discharge injunction imposed by 11 U.S.C. §524.[56]

57. As the trial of the adversary complaint approached, the parties jointly requested the Court to delay the trial so that the parties could present a salient legal issue – whether the Comptroller was required to file an adversary proceeding during the bankruptcy case in order to avoid the discharge of its tax assessment against Hall.[57]

58. This Court granted that request on August 12, 2015.[58]

59. The parties were thereafter permitted to brief that legal issue.

60. On September 23, 2015, this Court entered its "Order Denying Plaintiff's Request for Summary Determination."[59]

61. Construing this unusual request as a summary judgment motion by Hall on the issue of whether the assessed taxes had already been discharged by the entry of the discharge order in favor of Hall because the Comptroller had failed to bring an adversary proceeding seeking a determination of dischargeability, this Court ruled that:

(1) the 60-day period for the presentation of dischargeability complaints under Fed. R. Bankr. P. 4007(c) was inapplicable to the tax debts owed to the Comptroller;

(2) the dischargeability of the taxes assessed against Hall was governed instead by Fed. R. Bankr. P. 4007(b) and that, under that rule, there is no time limit for the determination of the dischargeability of a tax debt;

---

[56] *Id.*

[57] *See* adversary dkt #7.

[58] *See* adversary dkt #8.

[59] *See* adversary dkt #16.

**Page 11 of  22**

(3)  until a dischargeability determination is actually made regarding the taxes assessed against Hall, such tax assessments are not discharged and remain an enforceable obligation of Hall until such time as there is an express determination that the tax debt is dischargeable by a court of appropriate jurisdiction;

(4)  concurrent jurisdiction to determine the dischargeability of these tax debts exists between this bankruptcy court and any appropriate non-bankruptcy forum available under state law and that, in the absence of any complaint, the tax creditor retained its option to choose either forum; and

(5)  that Hall's request for a summary determination that the assessed taxes had already been discharged through the entry of his discharge order must be denied.[60]

62.  To the extent any of these findings of fact constitute conclusions of law, the Court expressly adopts them as such.

---

[60] *Id.*

# CONCLUSIONS OF LAW

*Jurisdiction*

1.　This Court has subject matter jurisdiction under 28 U.S.C. § 1334, 28 U.S.C. § 157(b)(2)(A) and (O); and 28 U.S.C. §2201(a).  This Court has personal jurisdiction over the parties to this adversary proceeding.

2.　In the context of considering the above-referenced adversary proceeding, this Court considers the propriety of an entry of a declaratory judgment, pursuant to the Federal Declaratory Judgment Act (the "DJA"), 28 U.S.C. § 2201(a).

3.　The Declaratory Judgment Act provides, in pertinent part:

> (a) In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, . . . , any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C.A. § 2201(a) (West 2006).

4.　Bankruptcy courts are among the federal courts that may grant declaratory relief under authority of the Declaratory Judgment Act.  *Brinson v. United States (In re Brinson)*, 485 B.R. 890, 903 (Bankr. N.D. Ill. 2013) *City of Central Falls, R.I. v. Central Falls Teachers' Union* (*In re City of Cent. Falls, R.I.),* 468 B.R. 36 (Bankr. D.R.I. 2012).

5.　"The purpose of the Declaratory Judgment Act is to settle 'actual controversies' before they ripen into violations of law or a breach of some contractual duty." *Hardware Mutual Casualty Co. v. Schantz,* 178 F.2d 779, 780 (5th Cir. 1949); *Compass Bank v. Vey Fin., LLC,* 2012 WL 1952290, at *6 (W.D. Tex., May 30, 2012).

6.     The consideration of a declaratory judgment action is discretionary, *Wilson v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) ["Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."]; and a federal court must always consider "whether the questions in controversy between the parties to the federal suit . . . can better be settled in the proceeding pending in state court." *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942).

7.     The exercise of §2201(a) jurisdiction by this Court is appropriate in this instance in that, though the precise issue of dischargeability is not presented in this dispute, this Court is arguably best-equipped to declare the ramifications of the filing of the bankruptcy case by Hall upon the Comptroller's post-bankruptcy efforts to collect this indebtedness from him.

*Relevant Texas Law*

8.     Texas Tax Code §111.022 provides:

(a)  If the comptroller believes that the collection of a tax required to be paid to the state or the amount due for a tax period is jeopardized by delay, the comptroller shall issue a determination stating the amount and that the tax collection is in jeopardy.  The amount required to be paid to the state or due for the tax period is due and payable immediately.

(b)  A determination made under this section becomes final on the expiration of 20 days after the day on which the notice of the determination was served by personal service or by mail unless a petition for a redetermination becomes final.

(c)  If a determination made under this section becomes final without payment of the amount of the determination being made, the comptroller shall add to the amount a penalty of 10 percent of the amount of the tax and interest.

4 TEX. TAX CODE ANN. §111.022 (West 2015).

9.      Texas Tax Code §111.024 provides, in relevant part:

(a)  A person who acquires a business or the assets of a business from a taxpayer through a fraudulent transfer or a sham transaction is liable for any tax, penalty, and interest owed by the taxpayer.

(b)  A transfer of a business or the assets of a business is considered to be a fraudulent transfer or a sham transaction if the taxpayer made the transfer or undertook the transaction:

> (1)  with intent to evade, hinder, delay, or prevent the collection of any tax, penalty, or interest owed under this title; or

> (2)  without receiving a reasonably equivalent value in exchange for the business or business assets subject to the transfer or transaction.

. . .

4 TEX. TAX CODE ANN. §111.024 (West 2015).


10.     Texas Tax Code §111.010 provides:

(a)  The attorney general shall bring suit in the name of the state to recover delinquent state taxes, tax penalties, and interest owed to the state.

(b)  This section applies to state taxes imposed by this title or by other laws not included in this title but does not apply to the state ad valorem tax on property.

(c)  Venue for and jurisdiction of a suit arising under this section is exclusively conferred upon the district courts of Travis County.

(d)  The state is entitled to interest at the rate of 10 percent per year on the amount of a judgment for the state beginning on the day the judgment is signed and ending on the day the judgment is satisfied.

4 TEX. TAX CODE ANN. §111.010 (West 2015).

*Status of Successor Liability Assessment Against Hall*

11.     The rights sought to be determined through this declaratory judgment action have been significantly altered during the pendency of this adversary proceeding.[61]

12.     The relief now sought by Hall can be generally reduced to a single proposition — that the grounds upon which successor liability can be imposed upon a Texas taxpayer under Texas Tax Code §111.024 constituted only allegations of the existence of a pre-petition debt on the Petition Date and should be characterized as a mere "cause of action" that was extinguished upon the conclusion of the bankruptcy case because the Comptroller took no action in either state court or the bankruptcy court to preserve or retain it.

13.     No legal authority for such a proposition has been tendered by Hall or located by the Court.

14.     The Texas sales tax collection process admittedly can be a perplexing process to the casual observer.

15.     It involves an initial assessment against a taxpayer by the Comptroller staff, and that assessment, if challenged, is subject to administrative review before an independent administrative law judge from the State Office of Administrative Hearings.

16.     Even if the sales tax assessment against a taxpayer is upheld in the administrative process, the State must still initiate a lawsuit in state district court in Travis County to "recover" the assessed sales taxes, at which the taxpayer may again assert all applicable defenses.[62]

---

[61]  For example, the requested declarations changed dramatically from the time of the complaint to the entry of the Joint Pre-Trial Order.  Further, some of the contentions outlined in the Pre-Trial Order were abandoned by Hall at trial, including the assertion that the Comptroller was precluded from utilizing the fraudulent transfer theory available under Tex. Tax Code §111.024 or that any issue regarding the dischargeability of the tax assessment would be decided in this proceeding.

[62]  4 TEX. TAX CODE ANN. §111.010 (West 2015).

**Page 16 of  22**

17.   While that litigation is essentially treated as a trial *de novo* regarding the validity of the assessment, notwithstanding the administrative process,[63] and while the State still has the ultimate burden of proof, the State may tender the Comptroller's certificate which constitutes *prima facie* evidence of both the existence of the delinquency and the amount owed by the taxpayer.[64]

18.   "The defendant [taxpayer] may not deny a claim for taxes, penalties, or interest unless the defendant timely files a sworn written denial that specifically identifies the taxes, penalties, and interest  that the defendant [taxpayer] asserts are not due and the amounts of tax, penalties, and interest that are not due."[65]

19.   As one court described it,

> A taxpayer attempting to deny responsibility for taxes faces a heavy burden once the comptroller produces a certificate showing the amount of taxes that are delinquent. The certificate is *prima facie* evidence of both the delinquency and the amounts owed. . . . [A] taxpayer has the burden to overcome a deficiency certificate's presumed correctness with such evidence tending to support the contrary as would be conclusive, or evidence which would be so clear and positive it would be unreasonable not to give effect to it as conclusive.

*Sundown Farms, Inc. v. State*, 89 S.W.3d 291, 293 (Tex. App.—Austin 2002, no pet.).

20.   Hall misconstrues the impact of the successor liability assessment in the Texas sales tax collection process and fails to appreciate the broad impact of the existence of concurrent jurisdiction to determine the existence and dischargeability of a tax debt.

---

[63]   *Greene v. State*, 324 S.W.3d 276, 288 (Tex. App.—Austin 2010, no pet.); *Herrera v. State*, 2002 WL 185476, at *5 n.4 (Tex. App. –Austin, Feb. 7, 2002, no pet.).

[64]   4 TEX. TAX CODE ANN. §111.013(a) (West 2015).  "As the Supreme Court has held, in the absence of modification expressed in the Bankruptcy Code, the burden of proof on a tax claim in bankruptcy remains where the substantive tax law puts it."  *In re TX OK Air, L.L.C.*, 2015 WL 5813433, at *3 (Bankr. N.D. Tex. Oct. 5, 2015) (citing *Raleigh v. Ill. Dept. of Revenue*, 530 U.S. 15, 24 (2000)).

[65]   4 TEX. TAX CODE ANN. §111.013(b) (West 2015).

21.    First of all, on the Petition Date, the Comptroller held a pre-petition claim against Hall based upon its successor liability assessment against him.[66]

22.    That tax determination stated the amount due to the Comptroller from Hall and, under the provisions of Texas Tax Code §111.022, "[t]he amount required to be paid to the state or due for the tax period [was] due and payable immediately."[67]

23.    No matter what Hall may think about the scope of authority granted to the Comptroller under state law to evaluate, initiate, and assess taxes based upon the successor liability theory under §111.024, and despite the fact that Hall had not yet exhausted his administrative or legal remedies to try to reverse that assessment, it was due and payable immediately upon its issuance and, in the absence of Hall exercising his administrative remedies, it would quickly begin to accrue penalties and interest.[68]

24.    Thus, Hall's contention that he did not owe taxes in his individual capacity on the Petition Date is a mischaracterization.  While he still possessed an opportunity on the Petition Date to utilize the administrative review process, and while he still had a *de novo* judicial review available before the State could bring other collection remedies to bear against him, the tax had been assessed against him and it would remain in effect, with accruing interest and penalties, until such time, if ever, that he achieved a reversal of that determination.[69]

25.    In the pre-petition period, Hall himself initiated the administrative review process to challenge that successor liability assessment.  That review process continued throughout the pendency of his bankruptcy case and concluded six months prior to the closing of his bankruptcy case.

---

[66]   The Bankruptcy Code defines a claim as a "right to payment, whether or not such right is reduce to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ."  11 U.S.C. §101(5)(A).

[67]   4 Tex. Tax Code Ann. §111.022 (West 2015).

[68]   *Id*.

[69]   Or, since he had filed for bankruptcy relief during the pendency of the administrative process, he could ultimately demonstrate that the underlying pre-petition tax assessment was dischargeable.

26.   In the post-petition period, that administrative review process resulted in the confirmation of the validity of the successor liability assessment against him, both by the administrative law judge and by the Comptroller on final review.

27.   Thus, prior to the closing of the bankruptcy case, the pre-bankruptcy assessment became final, but still subject to *de novo* judicial review, upon denial of Hall's motion for rehearing, with penalties and interest beginning to accrue for nonpayment on the 21st day after the denial.[70]

28.   Prior to the closing of the bankruptcy case, the recovery lawsuit was initiated in Travis County in which a final judgment was sought by the State for the amounts assessed against Hall under the successor liability statute.[71]

29.   All of the foregoing processes, occurring during and after the bankruptcy case, are sanctioned by the concurrent jurisdiction that state courts possess to determine the validity of, and the nondischargeability of, an assessed tax arising from pre-petition conduct.[72]

30.   Hall's insistence that his liability under the successor liability provision had to be established in the bankruptcy court or that some other, unidentified action was required in the bankruptcy process in order to preserve the Comptroller's right to proceed with the tax collection process in the post-discharge period simply ignores the existence of concurrent jurisdiction in this area.

31.   As set forth in the Court's "Order Denying Plaintiff's Request for Summary Determination" issued earlier in this proceeding,[73] the determination of a pre-petition tax debt, and whether such debt is nondischargeable, is a proceeding governed by Fed. R. Bankr. P. 4007(b), rather than Rule 4007(c).

---

[70]   Defendant's Ex. D  at p. 2 [Bates #035].  4 TEX. TAX CODE ANN. §111.022 (West 2015).

[71]   That litigation remains pending.

[72]   While Hall would technically be correct that the administrative process regarding the establishment and the collection of a nondischargeable tax would still be subject to the restrictions imposed by the automatic stay, the fact that the continuation of that administrative process in the post-petition period was initiated by, and progressed at the instance of, the debtor would likely lessen the impact of any act which might otherwise constitute a technical violation of the stay.

[73]   *See* adversary dkt #16.

**Page 19 of  22**

32.  Thus, the 60-day filing requirement of Rule 4007(b) is inapplicable and the action for the establishment of a pre-petition tax liability can be filed at any time and need not be adjudicated prior to the conclusion of the bankruptcy case.

33.  As was referenced in the summary determination order, "[a] tax of the kind specified in Section 523(a)(1) of the Bankruptcy Code is not discharged in a chapter 7 case, and *continues to be an enforceable obligation after the entry of the debtor's discharge . . .*"].  See *In re Thompson*, 207 B.R. 7, 10 (Bankr. M.D. Fla. 1996) (emphasis added).

34.  Because of the existence of concurrent jurisdiction over the existence, and potentially nondischargeable nature, of a pre-petition tax obligation, "[c]onsequently, at their option, creditors seeking a nondischargeability determination need not submit to the jurisdiction of the bankruptcy court, but instead may invoke the jurisdiction of any appropriate nonbankruptcy forum *either before or after* the bankruptcy proceeding has been closed." *Whitehouse v. LaRoche,* 277 F.3d 568, 576 (1st Cir. 2002) (emphasis added).  *See also*, *Galbreath v. Ill. Dept. of Revenue (In re Galbreath)*, 83 B.R. 549, 551 (Bankr. S.D. Ill. 1988) [holding that "a creditor with a type of debt listed as nondischargeable under § 523(a)(1) . . . may wait until the conclusion of the bankruptcy proceeding and then bring suit on its claim in the appropriate nonbankruptcy forum"].

35.  As the Eleventh Circuit has stated in regard to a federal tax liability:

> The Bankruptcy Code clearly specifies that certain types of creditors must appear in the bankruptcy court and be specifically adjudicated by that court to be entitled to an exception from discharge.  *See* 11 U.S.C. § 523(c)(1).  The exception for tax fraud, § 523(a)(1)(C), is not among those listed in § 523(c).   Hence, the IRS need not appear and object in the bankruptcy court to be excepted from the discharge under § 523(a)(1)(C).  Instead, the IRS may wait until the bankruptcy discharge is invoked as a defense to its collection efforts, and then prove a factual basis for the tax fraud exception in the collection proceedings, as it has done here.

*Console v. C.I.R.*, 291 Fed. App'x. 234, 237 (11th Cir. 2008).

36.     The same is true in this case.  Hall simply fails to present any fact or law that would foreclose or preclude the exercise of concurrent jurisdiction and thereby prevent the Comptroller from continuing its collection efforts against him in the post-bankruptcy period.

37.     Hall is free to raise or repeat in the state court any defense otherwise available to him under state law and he is free to plead his discharge defense.

38.     However, the determination of the validity of the assessed tax liability, and the applicability of any discharge defense can occur even after the closing of the bankruptcy case in a court of concurrent jurisdiction.

39.     Thus, the Comptroller is well within its rights, without any fear of violating the discharge injunction, to pursue Hall in the district court in Travis County for the recovery of the assessed tax liability. *See McAdam v. New Hampshire (In re McAdam)*, 402 B.R. 473, 482 (Bankr. D.N.H. 2009).

## <u>CONCLUSION</u>

40.     The Court accordingly declares, pursuant to 28 U.S.C. §§2201(a):

(1) The Texas Comptroller of Public Accounts was not required to file an adversary proceeding under Fed. R. Bankr. P. 7001, or any other proceeding in any other venue, during the pendency of the bankruptcy case of the Plaintiff-Debtor, Charles Ryan Hall, in order to proceed in the post-bankruptcy period to exercise its legal remedies to collect its tax assessments against Charles Ryan Hall which were incurred prior to March 18, 2010, or in order to contest any discharge of such pre-petition tax assessments.

(2) The Texas Comptroller of Public Accounts was not required to file an objection to any of the exemption claims asserted by the Plaintiff-Debtor, Charles Ryan Hall, in his bankruptcy case in order to proceed in the post-bankruptcy period to exercise its legal remedies to collect its tax assessments against Charles Ryan Hall which were incurred prior to March 18, 2010, or in order to contest any discharge of such pre-petition tax assessments.

41.     All other relief requested by the Plaintiff's Complaint, as modified by the Joint Pre-Trial Order, in the above referenced adversary proceeding shall be denied.

42.    To the extent any of these conclusions of law constitute findings of fact, the Court expressly adopts them as such.

43.    An appropriate judgment shall be entered in this adversary proceeding in a manner consistent with these findings and conclusions.

Signed on 02/01/2016

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE